IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

TIMOTHY WHITEAGLE, CLARENCE
PETTIBONE, and DEBORAH ATHERTON,

Defendants.

ORDER

11-cr-00065-wmc

---

At a final pretrial conference held July 17, 2012, the court heard argument on the parties' motions in limine and other issues. This order recounts the court's rulings on those matters.

**A. United States' Motions in Limine (dkt. #71)**

1. **Whether any person or entity, other than the companies described in the indictment, paid anyone to help the person or entity do business with the Ho-Chunk Nation.**

GRANTED to the extent such evidence is offered to show or shows that any person or entity paid a legislator or other government official in exchange for favorable treatment on a quid pro quo basis. Evidence indicating only that an entity contributed money to the Ho-Chunk Nation will be allowed, as will evidence that certain persons or entities hired and paid non-government officials to lobby on their behalf.

2. **Whether gift-giving is a tradition or cultural norm of the Ho-Chunk Nation.**

GRANTED except that Whiteagle may make a specific proffer of the testimony he wishes to submit on this subject for the court's consideration by Thursday, July 19, 2012.

3. **Whether Whiteagle or Atherton gave money or things of value to any individual or entity, other than Pettibone, his relatives, and Park Institute.**

GRANTED except that Whiteagle may make a specific proffer of the evidence he wishes to submit.

4. **Whether any defendant did charity work or good deeds.**

GRANTED except that Whiteagle may make a specific proffer of the evidence he wishes to submit.

5. **The existence and content of recorded statements of Whiteagle to Brian Johnson.**

GRANTED unless properly used on cross-examination or for rehabilitation.

6. **Whether Whiteagle filed any returns or amended tax returns after he learned on August 5, 2008 that he was under investigation by the Internal Revenue Service.**

GRANTED.

7. **Whether Atherton was unduly influenced by Whiteagle, coerced by him, or acted under duress, absent a finding by the Court that Atherton has made a sufficient showing, outside the presence of the jury, that she can meet all the elements of a proposed justification defense.**

DENIED as moot.

8. **Whether any defendant acted on advice of counsel, absent a finding by the Court that a defendant has made a sufficient showing, outside the presence of the jury, that the defendant can meet all the elements of a proposed advice of counsel defense.**

GRANTED.

9. **Any expert evidence or testimony, without first providing an opportunity for a Daubert hearing.**

GRANTED.

10. The fact that others have not been charged, except -- if supported by facts -- to support an argument that a particular witness may have received a benefit by not being charged.

GRANTED.

11. Any argument of prosecutorial misconduct, including any argument that the prosecution is unfairly targeting any defendant or protecting any unindicted person.

GRANTED.

**B. Defendant Whiteagle's Motions in Limine (dkt. ##78 & 101)**

Defendant Whiteagle moves to exclude the following.

1. **Any evidence of Whiteagle's prior criminal record.**

GRANTED with exception that convictions may be used on cross-examination of defendant provided they meet the requirements of Fed. R. Evid. 608(b).

2. **"Other acts" evidence being used to impeach Whiteagle.**

RESERVED pending government proffer should Whiteagle take the stand.

3. **Any evidence relating to Whiteagle's alleged 2002 tax evasion and the subsequent actions alleged in Count 12 of the Superseding Indictment.**

GRANTED.

4. **Any reference to Clarence Pettibone's April 5, 2012 plea of guilty to Count 5 to statements made in open court, or any other testimonial statements.**

GRANTED, unless Pettibone takes the stand, in which case the United States would be allowed to introduce evidence of the guilty plea prophylacticly on direct.

5. **Any reference to shredded documents or any other documents seized from Clarence Pettibone's residence.**

GRANTED.

> 6. **Any handwritten notes from Clarence Pettibone that pertain to alleged responses to questions regarding Trinity or any other project which would comprise the subject matter of this prosecution.**

GRANTED to the extent that the notes are not statements made in furtherance of the conspiracy. Notes that are statements in furtherance of the conspiracy will be allowed.

> 7. **Any statements made by Clarence Pettibone alleged to be untruthful statements to federal agents which were charged in Counts 11.**

The United States argues that these statements are made in furtherance of the conspiracy, but in any case are not hearsay because they are not being introduced to prove the truth of the statements. Whiteagle argues that they are hearsay despite being false citing to *Lyle v. Koehler*, 720 F.2d 426 (6th Cir. 1983), a case concerning the admissibility of letters written by a codefendant attempting to establish an alibi. In a 2 to 1 split, the *Lyle* panel concluded:

> Although we consider the question of the proper classification of the letters exceedingly close, we find that the inferences they necessarily invite form an integral part of the letters. They were introduced because by inference they assert the proposition of fact that Kemp and Lyle committed the robbery and hence need an alibi. Accordingly, we conclude that the letters are hearsay, and that their use implicated Lyle's right to confront and cross-examine the witnesses against him.

*Id.* at 433.

It is difficult to reconcile *Lyle* with both the text of Fed. R. Evid. 801 ("'Hearsay' means a statement that . . . a party offers in evidence to prove the truth of the matter asserted in the statement") and the Supreme Court's decision in *Anderson v. U.S.*, 417

U.S. 211 (1974). In *Anderson*, the court concluded that false, out-of-court statements made by defendants are not hearsay, explaining:

> Out-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted. The election contest testimony of Tomblin and Browning, however, was not admitted into evidence in the § 241 trial to prove the truth of anything asserted therein. Quite the contrary, the point of the prosecutor's introducing those statements was simply to prove that the statements were made so as to establish a foundation for later showing, through other admissible evidence, that they were false.

*Anderson*, 417 U.S. at 219-20. The mere fact that inferences harmful to Whiteagle can be drawn from Pettibone's false statements does not make them "offered for their truth" for purposes of the hearsay rule. Even if the court were to accept the *Lyle* majority's attempt to distinguish *Anderson*, the distinction was that the prosecutor wanted to introduce statements in *Lyle* that essentially represented a confession of guilt by virtue of one defendant attempting to get others to agree on a false alibi. The facts of the present case are much closer to *Anderson*, where the statements at issue were statements of individual conspirators lying to authorities about their conduct. Accordingly, Whiteagle's motion in limine regarding this evidence is DENIED.

### C. United States' Motion to Take Judicial Notice of Relevant of Portions of the Ho-Chunk Nation's Code of Ethics Act (dkt. #72)

GRANTED as to the portions specified by the United States. Defendant Whiteagle may proffer to the court other portions of the Ho-Chunk Nation's Code of Conduct he believes relevant.

D.  **Subpoening and sequestration of Witnesses**

The court orders sequestration of the witnesses generally.  Defendant Whiteagle and two designated case agents assisting the United States will be allowed to sit at respective counsel tables during trial.  Witnesses who appear and testify at trial pursuant to subpoena shall be deemed released from the subpoena at the completion of their testimony unless either party specifically requests otherwise.

Entered this 19th day of July, 2012.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge